IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    8:18-CR-064 (GTS) |
| | ) | |
| **v.** | ) | **Rule 11(c)(1)(C) Plea Agreement** |
| | ) | |
| **BRANDON JOCK,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States
Attorney for the Northern District of New York, and defendant **BRANDON JOCK** (hereinafter
"the defendant"), by and through the defendant's counsel of record, hereby enter into the following
plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1)   **The Defendant's Obligations:**

    a)   **Guilty Plea:** The defendant will waive indictment and plead guilty to Counts 1 - 5 of the
information in Case No. 8:18-CR-064 (GRS) charging him with making, printing, or
publishing a notice or advertisement seeking or offering to receive, exchange, buy,
produce, display, distribute, or reproduce child pornography (Count 1), in violation of 18
U.S.C. § 2251(d)(1)(A), and transportation of child pornography (Counts 2 - 5) , in
violation of 18 U.S.C. § 2252A(a)(1).

    b)   **Special Assessment:**   The defendant will pay an assessment of $100 per count of
conviction pursuant to 18 U.S.C. § 3013. The defendant agrees to deliver a check or money
order to the Clerk of the Court in the amount of $500, payable to the U.S. District Court,
at the time of sentencing.

    c)   **Additional Special Assessment:** In addition to the assessment imposed under § 3013,
unless the court finds the defendant to be indigent, the defendant shall pay an additional

assessment of $5,000, per count, pursuant to 18 U.S.C. § 3014(a). This assessment is payable only after the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal convictions on which this assessment is based.  18 U.S.C. § 3014(b).

d) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all of the terms of this plea agreement.

e) **Restitution:** The minors depicted in the images and/or videos involved in the defendant's criminal activity, along with any and all relevant conduct, are victims of his offenses, whether or not those minors are named in the information or identified in the factual basis of the defendant's guilty plea. The defendant therefore consents to an order pursuant to 18 U.S.C. §2259(b) directing him to pay restitution to those victims. The parties agree that restitution shall be determined by the Court in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," and shall be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S.Ct. 1710, 1727 (2014).

f) **Forfeiture:** Pursuant to 18 U.S.C. § 2253 and 21 U.S.C. § 853(p), the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the indictment described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

(1) one LG model VK410 tablet, IMEI # 3543 4206 5038 646, and

(2) one ZTE cellphone, serial number e38cee09.

(3) If any of the property described above, as a result of any act or omission of the defendant, either: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) and Fed. R. Crim. P. 32.2(e).

2)   **The Government's Obligations:**

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the information in Case No 8:18-CR-064 (GTS) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement. This agreement does not prevent the government from seeking charges based on other conduct.

b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3)   **Agreed-Upon Disposition:**   Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Government and the defendant agree that the sentence of 360 months of imprisonment, a term of lifetime supervised release, a fine as may be determined by the Court, an order of restitution in an amount as may be agreed to by the parties or ordered by the Court for any victims who file for restitution, forfeiture of the assets described above, and a special assessment of $500 is the appropriate disposition of this case (hereinafter referred to as "the agreed-upon disposition"). The United

States Attorney's Office and the defendant agree that, to the extent the agreed-upon disposition departs from the applicable sentencing guidelines range, that departure would be made for justifiable reasons under U.S.S.G. §6B1.2(c)(2). In particular, the specified sentence is reasonable and appropriate under the unique combination of facts and circumstances relating to the defendant, the offenses of conviction, and related relevant conduct.

4)     **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offenses to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

a) **Maximum term of imprisonment:**

Count 1:      30 years, pursuant to 18 U.S.C. § 2251(e).

Counts 2 - 5:  20 years, pursuant to 18 U.S.C. § 2252A(b)(1).

b) **Mandatory minimum term of imprisonment:**

Count 1:      15 years, pursuant to 18 U.S.C. § 2251(e).

Counts 2 - 5:   5 years, pursuant to 18 U.S.C. § 2252A(b)(1).

c) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571.

d) **Supervised release term:**    In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment. *See* 18 U.S.C. § 3583(k). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years.

e) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant

4

resides, where the defendant is an employee, and where the defendant is a student. For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction. A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment. Further, notwithstanding the description set out above of the consequences of a violation of the conditions of supervised release, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court will revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

f) **Other adverse consequences:** Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

5) **Elements of Offenses:** The defendant understands that the following are the elements of the offenses to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements.

Count 1:

a) First: The defendant knowingly made, printed, or published, or caused to be made, printed or published, a notice or advertisement;

b) Second: The notice or advertisement sought or offered to receive, exchange, buy, produce, reproduce, or display any visual depiction, where the production of the visual depiction involved the use of person under the age of 18 years engaging in sexually explicit conduct;

5

   c) Third:  The notice or advertisement was actually transported or transmitted in or affecting
interstate or foreign commerce by any means including by computer, or the defendant knew
or had reason to know that the visual depiction would be transported or transmitted in or
affecting interstate or foreign commerce, by any means including by computer.

Counts 2 - 5:

   a) First:   The defendant knowingly transported a visual depiction;

   b) Second: The visual depiction was transported in interstate or foreign commerce using a
means or facility of interstate or foreign commerce, or in or affecting such commerce by
any means, including by computer;

   c) Third:  The visual depiction was child pornography; and

   d) Fourth: The defendant knew of the sexually explicit nature of the visual depiction and that
the visual depiction was of an actual minor engaged in sexually explicit conduct.

6)    **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts
demonstrate the defendant's guilt for the offenses to which the defendant is pleading guilty, and
that there are no facts establishing a viable defense to those offenses:

   a) During the course of a child exploitation investigation, the FBI in Salt Lake City, Utah
arrested a person who had been using a Kik account to trade child pornography.  Using the
account of the Salt Lake City defendant, between April 12, 2017 and April 27, 2017, an
FBI Special Agent in Salt Lake City, operating in an undercover capacity (UC), identified
Kik usernames "BJ13662," "WTF1366," and "JA3600" as administrators and members of
Kik groups entitled "Boy Links Only" and "The Loony Bin," and recorded online sessions
with these Kik groups.  Investigation revealed, and Brandon Jock admits, the defendant
was the user of Kik usernames "BJ13662," "WTF1366," and "JA3600," and was the

administrator of these two groups. Jock ran each of them, with specific rules, for the purpose of posting and trading image and video files of child pornography.

b) Between April 12 and 13, 2017, Jock, as "BJ13662" transmitted and distributed child pornography over the Internet **(as charged in Count 2)** by posting the following two videos to "The Loony Bin":

      1.    A video that is approximately 2 minutes in length and depicts an adult male manually stimulating a prepubescent male's penis.

      2.    A video that depicts a male who appears to be under the age of 15 digitally penetrating his own anus.

c) The UC also recorded a session of the Kik group "Boy Links Only." "BJ13662" and "WTF1366" (both Jock) were listed as "Admins" (administrators) for the group. Between April 12 and 14, 2017, Jock posted links in the "Boy Links Only" group that were designed to, and did, lead members of the group to access child pornography that Jock had uploaded to and stored in Dropbox accounts. (Dropbox is a file hosting service operated by American company Dropbox, Inc., headquartered in San Francisco, California. Dropbox offers cloud storage, file synchronization, personal cloud, and client software. Dropbox creates a special folder on the user's computer, the contents of which are then synchronized to Dropbox's servers and to other computers and devices designated by the user.)

d) The UC accessed a Dropbox link posted by "BJ13662," and on April 12, 2017 downloaded from that link the contents of a file entitled "boy love vids wanking." One of the videos in this folder is entitled "7.avi." It is approximately 32 minutes in length and depicts what appears to be a prepubescent male under the age of 13 displaying his erect penis in a lewd

and lascivious manner and performing oral sex on a male who appears to be under the age of 16. [1]

e) Within the sessions recorded by the UC, Jock, as administrator, was seen actively patrolling the groups - demanding that new members post child pornography to the site and disabling those who did not comply in a timely manner.

f) A federal search warrant for Jock's Massena residence was executed on August 16, 2017. Brandon Jock was located at the residence and agreed to be interviewed by FBI SA Heather Weber and NYSP Inv. Todd Grant.

g) In a *Mirandized* and videotaped statement at the NYSP Barracks in Massena, NY, Jock admitted using all three of the Kik usernames identified by the undercover agent. He also admitted that he is the administrator of the Kik member groups associated with those usernames. He admitted that the Kik member groups were created specifically for individuals to distribute child pornographic material, discuss their sexual interests in children, and discuss the latest technologies available to circumvent law enforcement's investigative methods to identify individuals involved in child pornography. Jock stated that as administrator of the groups he is responsible for establishing and enforcing member rules, including vetting members' access, and ensuring compliance with the rules. The rules included posting child pornography routinely, and posting only images or videos that correspond to the advertised child pornography descriptions. For example, if the

---

[1]    **As charged in Count 1**, 18 U.S.C. 2251(d)(1)(A) makes it unlawful to make, print, or publish, or cause to be made, printed, or published, any notice or advertisement seeking or offering to receive, exchange, buy, produce, display, distribute, or reproduce child pornography in and affecting interstate and foreign commerce. This includes posting links that lead others to access child pornography. *United States v. Christie*, 570 F.Supp.2d 657, 691 (D.N.J. 2008); *United States v. Sewell*, 513 F.3d 820, 821-22 (8th Cir. 2008); *see also United States v. Rowe*, 414 F.3d 271 (2d Cir. 2005).

advertisement requested pornographic material of boys, Jock would ban a group member for posting material depicting girls.

h) During the interview, Jock was shown the video entitled "7.avi," described above, and stated that recognized it as one that he intentionally shared over the internet.

i) Jock further admitted that he currently possessed approximately 160 gigabytes of child pornographic material on various encrypted cloud storage accounts. Jock stated that he possessed the material for sexual gratification and to distribute to the various member groups he administered. Jock advised that he has acted in concert with the various group creators to ensure that the members of the groups were not law enforcement and abided by all of the groups rules.

j) Jock reviewed three of his Dropbox accounts with SA Weber and Inv. Grant. One of Jock's Dropbox accounts contained a folder, configured to be shared, entitled "New Babies." The folder contained dozens of videos and images, one of which, entitled "vid_20170524_142005.mp4," depicts an infant with what appears to be a cloth over her eyes, her arms and legs spread and tied down to a bed, and an adult male vaginally penetrating her with his erect penis. The Dropbox account indicates that this file was being shared since 7/15/2017 at 11:21pm. Law enforcement disabled the account the day of the warrant execution.

k) Another Dropbox folder, entitled "Boy and Boy," also configured to be shared, contained a video entitled "2013_02_10_16_15_13_ab6a2e7b2e.flv," depicting two male children, who appear to be under the age 16, engaged in mutual hand to penis masturbation. The Dropbox account indicated this file was being shared since 7/18/2017 at 12:44pm. Again, law enforcement disabled the account on the day of the warrant execution.

l) Jock admitted that he has employed various techniques to evade law enforcement detection such as masking his IP address to make it appear that he is located overseas.

m) A federal search warrant to Dropbox for Jock's three Dropbox accounts resulted in the recovery of over 13,000 images and videos of child pornography that Jock had transported over the Internet to store in those accounts. More specifically, Dropbox records indicate that (1) **as charged in Count 3:** between June 27, 2016 and July 7, 2017, the defendant transported over the Internet  more than 7,000 files of child pornography, stored in 246 separate folders, into the Dropbox account associated with email address brandoxxxxxx@gmail.com; (2) **as charged in Count 4:** between May 30, 2017 and July 30, 2017, the defendant transported over the Internet more than 6,000 files of child pornography, stored in 118 separate folders, into the Dropbox account associated with email address bjjxxxx@gmail.com; and (3) **as charged in Count 5:** between August 6, 2017 and August 14, 2017, the defendant transported over the Internet 540 files of child pornography, stored in 40 separate folders, into the Dropbox account associated with email uxxxxxn@matchpol.net.

n) Additionally, a forensic examination of an LG VK410 tablet recovered during the search warrant revealed videos captured by Jock of his live chats with minor teenage boys, in which he is observed instructing the minors to engage in various forms of masturbation, and the lewd display of their genitalia. Jock admitted to agents that he believed one of the boys to be 14 years old. A second minor, who has been identified and interviewed by law enforcement, was 13 years old at the time of his live chats with Jock. The captured video includes "picture in picture" showing Jock masturbating at the same time he is watching

the minors, and includes text messages showing Jock instructing the minors on the acts he wants to see them perform. Jock's face is visible in some of the footage.

7)   **Stipulations:**

The parties agree that pursuant to U.S.S.G. § 2G2.2, the defendant's base offense level is 22, and that the following specific offense characteristics apply:

      1)    U.S.S.G. § 2G2.2(b)(2): the material involved a prepubescent minor or a minor who had not attained the age of 12 years, resulting in a 2-level increase;

      2)    U.S.S.G. § 2G2.2(b)(3)(B): the offense involved distribution in exchange for valuable consideration, but not for pecuniary gain, resulting in a 5-level increase;

      3)    U.S.S.G. § 2G2.2(b)(4): the offense involved material that portrays sadistic conduct, resulting in a 4-level increase;

      5)    U.S.S.G. § 2G2.2(b)(5): the defendant engaged in a pattern of activity involving the sexual exploitation of minors, resulting in a 5-level increase;

      6)    U.S.S.G. § 2G2.2(b)(6): the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, resulting in a 2-level increase; and

      7)    U.S.S.G. § 2G2.2(b)(7)(D): the offense involved 600 or more images, resulting in a 5-level increase.

8)   **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a)  The convictions resulting from the defendant's guilty plea;

11

    b) Any sentence consistent with the agreed-upon disposition described above or any less severe sentence.

---

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right.   Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination.   The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.   The Court is neither a party to, nor bound by this Plea Agreement.   The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office.   If the Court rejects the provisions of this agreement agreeing to a specific sentence, the Court will inform the parties that the court rejects the plea agreement; advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

**D. Sentencing:**

    a.  **Maximum terms of imprisonment:**  The defendant understands that if the Court rejects the Plea Agreement and the defendant does not withdraw the guilty plea, then the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement.  If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other.  Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively.  See 18 U.S.C. § 3584.

    b.  **Mandatory minimum terms of imprisonment:**  If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment.  In such cases if the Court rejects the Plea Agreement and the defendant does not withdraw the guilty plea, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies.  Such exception may be dependent on a motion by the government.

    c.  **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

    d.  **Sentencing guidelines:**

i.   In the event that the Court rejects the Plea Agreement and the defendant does not withdraw the guilty plea, the defendant understands that actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder.  While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

e.   **Factual findings:**  The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties.  In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay.   The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f.   **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government

14

may introduce the defendant's statements into evidence in any prosecution. If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement. To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g.  **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8. No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

h.  **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

15

E. **Government's Obligations Contingent on Imposition of Agreed-Upon Sentence:** If the Court imposes a sentence less severe than the agreed-upon disposition, the government has no obligation to dismiss existing charges or refrain from seeking additional charges. The defendant waives (gives up) any defense or objection to the commencement of any prosecution for new charges that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

   a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

   b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and

16

nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664. In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court. The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by

17

the victim as a proximate result of the offense. The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

    a.   The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

    b.   The defendant consents to the entry of an order of forfeiture of the assets described above.

    c.   The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents. The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court. The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

    d.   Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture. Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.  In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party. The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets. The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

**I.  Determination of Financial Condition and Payment of Interest and Penalties:**

a.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

b.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

**J.  Remedies for Breach:**

a.  Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or

otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part.  In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b.   If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

   i.   To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement.  The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

   ii.  In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

   iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

    iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

    v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

    vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

    vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant.  References to "the government" in this agreement refer only to that Office.  This agreement does not bind any other federal, state, or local prosecuting authorities.  Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below.  No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be

effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

GRANT C. JAQUITH
United States Attorney

_____
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

3 | 14 | 18
Date

_____
BRANDON JOCK
Defendant

3 / 14 / 18
Date

_____
Randi Juda Bianco
Attorney for Defendant
Bar Roll No.   507514

3/14/18
Date